IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JESSE JAMES BOWDEN, | ) |
|     Plaintiff, | ) Civil Action No. 7:20cv00103 |
| v. | ) MEMORANDUM OPINION |
| RANDALL BATEMAN, et al., | ) By:   Hon. Thomas T. Cullen |
|     Defendants. | )        United States District Judge |

Jesse James Bowden, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that Defendants Randall Bateman, Curley Seller, and J. Collins (collectively "Defendants") failed to protect him from a dog bite. Defendants filed a motion for summary judgment, arguing that Bowden failed to exhaust available administrative remedies before filing this action. Bowden has responded to the motion, and the matter is now ripe for decision. After reviewing the record, the court will grant the defendants' motion for summary judgment.

I.

Bowden alleges he was "maliciously attacked" by a dog from the therapeutic dog program. On September 20, 2019, two dogs entered Bowden's housing unit for "therapeutic petting purposes" and "everyone" began petting them. When Bowden pet one of the dogs, the dog bit his right hand, drawing blood and leaving puncture marks. Bowden was taken to the medical unit and received treatment, including pain medication, for his injuries. Bowden claims Defendants knew that this dog had a history of attacking other inmates and causing

serious injuries but made no effort to "cure and/or eliminate the possibility of further attacks." (Compl. ¶ 9, ECF No. 1.)

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). Rather, the evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes

the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Defendants argue that Bowden failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). For the following reasons, the court will grant defendants' motion for summary judgment.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Porter*, 534 U.S. at 524; *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford*, 548 U.S. at 90. The court, however, is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

In support of the defendants' motion for summary judgment, Grievance Coordinator S. Massenburg provided an affidavit; Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and all of Bowden's grievance records. (ECF No. 22-1.) In the affidavit, Massenberg explained that inmates are oriented to the Offender Grievance Procedure upon arriving in the VDOC. Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve, informally, his complaint. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information

management system, and a receipt is issued to the inmate. Within 15 days, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If a response is not given to the inmate within fifteen days of the informal complaint being logged, the inmate may proceed to filing a regular grievance and must attach the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally.

A regular grievance generally must be filed within thirty days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and a receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance should be returned to the inmate within two working days from the date it is received with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review. If a grievance is accepted at intake, it may proceed through up to three levels of review.

Bowden claims that he filed in informal complaint concerning the dog-bite incident on September 25, 2019. Bowden did not receive a receipt for this informal complaint and the VDOC has no record of it ever being filed. Consequently, Bowden never received a response to this informal complaint. Bowden subsequently filed a regular grievance concerning the dog-bite incident. The grievance was dated October 11, 2019, and date-stamped as received by the grievance office on October 15, 2019. Bowden attached a copy of his purported September

25, 2019, informal complaint, but he did not attach a receipt for it. The regular grievance was rejected at intake on October 15, 2019, indicating that he had not used the informal process to resolve his complaint before filing the grievance. Bowden appealed the intake decision and the Regional Ombudsman upheld the rejection because VACORIS had no record of Bowden filing an informal complaint. (*See generally* ECF No. 22-1, pgs. 21–25.)

On December 12, 2019, Bowden filed another informal complaint about the dog-bite incident. In response to the informal complaint, on December 16, 2019, defendant Unit Manager Bateman stated that when the dogs went into Bowden's pod, the dog handlers explained to the inmates that they should not surround or touch the dogs from behind.[1] Unit Manager Bateman also acknowledged that when Bowden touched the dog from behind, it bit him, and Bowden was taken directly to medical for examination. Bowden then filed a regular grievance, which he neither dated nor signed, and the grievance was rejected as untimely filed on December 18, 2020, nearly three months after the incident.

In response to Defendants' arguments that he failed to exhaust available administrative remedies, Bowden summarily claims that the defendants "thwarted" the "intake process" by not answering his informal complaint, that the Grievance Coordinator "deliberately prohibited" him from exhausting his remedies, and that the Regional Ombudsman did not return his informal complaint on a "proper timeline."[2]

---

[1] Bowden disputes that any such warning was given to the inmates; however, this detail is irrelevant to the court's determination of whether administrative remedies were available and properly exhausted.

[2] Bowden also submitted an affidavit of another inmate in which the other inmate outlines his own experience with the grievance process in an unrelated incident. This affidavit does not discuss any facts concerning the instant case.

The record reflects that Bowden did not properly complete the grievance process concerning his claim. OP 866.1 requires that, in filing a regular grievance after not receiving a response to an informal complaint, an inmate must attach the receipt for his informal complaint. The VDOC's grievance process does not allow inmates to submit unprocessed copies of informal complaints in lieu of an informal complaint receipt. This is because "the institution is unable to verify which informal complaints might have been submitted, but not yet responded to, versus those which were handwritten by the offender but never actually turned in." When Bowden's first regular grievance concerning the dog bite was rejected, he still had approximately ten days to determine what had happened to his alleged informal complaint or to file a new one and obtain a receipt for it. Instead, Bowden appealed the intake decision and then ultimately started the grievance process again from the beginning, well after the time to do so had expired.

Although Bowden claims Defendants and others interfered with his exhaustion, he does not explain how. He does not claim that he was unable to obtain forms, and based on his grievance record, it appears he was in fact able to obtain them. He also does not allege that anyone stopped his grievances from being filed. Instead, it appears that all of his submissions—with the exception of the initial informal complaint—were all received by the grievance department.

Bowden's conclusory allegations of interference appear to concern the amount of time taken to respond to his submissions. However, there is a process built into OP 866.1 that allows an inmate to proceed with the grievance process even when no response is given to

him. Accordingly, the court concludes the Bowden has not established that administrative remedies were unavailable to him. Finding no genuine dispute of material fact on this determinative issue, the court concludes that Defendants are entitled to summary judgment as a matter of law because Bowden failed to exhaust available administrative remedies.

## IV.

For the reasons stated, the court will grant Defendants' motion for summary judgment.

**ENTERED** this 2nd day of November, 2020.

                                        */s/ Thomas T. Cullen*
                                      HON. THOMAS T. CULLEN
                                      UNITED STATES DISTRICT JUDGE